UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| Stephen S. Ackley, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No. |
| | ) | |
| U.S. Bank National Association, | ) | |
| As Trustee For the Structured | ) | |
| Asset Investment Loan Trust, 2005-3 | ) | |
| | ) | |
| Ocwen Loan Servicing, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

### Introduction

This is an action for actual, compensatory, statutory, and punitive damages brought by Stephen S. Ackley (the "Plaintiff"), an individual consumer, against U.S. Bank National Association, as Trustee for the Structured Asset Investment Loan Trust, Mortgage Pass-Through Certificates, Series 2005-3 ("U.S. Bank"), and Ocwen Loan Servicing, LLC ("Ocwen," and, collectively, the "Defendants"), for violations of the Bankruptcy Discharge Injunction pursuant to 11 U.S.C. § 524, the federal Fair Debt Collection Practices Act, 15 U.S.C. §§1692 *et seq.* and the Maine Fair Debt Collection Practices Act, 32 M.R.S.A. §§11001 *et seq.* (collectively, the "FDCPA").

### I.   Jurisdiction and Venue

1. Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331 and 1367.

2. Venue is proper here pursuant to 28 U.S.C. § 1391, as Plaintiff is a resident of Cumberland County, Maine, all relevant events giving rise to Plaintiff's claims occurred in this District, and Defendants were doing business in Maine during all relevant times.

## II.   Parties

3. Plaintiff Stephen S. Ackley is a natural person residing in Casco, Maine.

4. Defendant U.S. Bank is a national banking association with its principal place of business in Minneapolis, Minnesota.

5. Defendant U.S. Bank is the trustee for the Structured Asset Investment Loan Trust, 2005-3. Upon information and belief, Plaintiff's loan is in this Trust.

6. Defendant Ocwen is a limited liability corporation organized under the laws of Delaware, with a principal place of business in Florida.

7. Defendant Ocwen's sole member is Ocwen Financial Corporation, a publicly traded Florida corporation.

8. Defendant Ocwen acquired servicing of Plaintiff's mortgage loan when said loan was in default.

9. Defendant U.S. Bank hired, and/or otherwise retained Ocwen to service the loan.

10. As servicer of the loan, Defendant Ocwen was acting under the authority and as the agent of Defendant U.S. Bank.

11. Defendant Ocwen engages in the business of collecting debts in this state.

12. Defendant Ocwen regularly engages in the enforcement of security interests securing debts.

13. Defendant Ocwen engages in the collection of debts using the mails and/or the telephone, and Defendant Ocwen regularly attempts to collect debts alleged to be due another.

14. Defendant Ocwen is a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. § 1692a(6), 32 M.R.S.A. §§ 11002(6) and 11003(7)(C).

### III.     Facts

15. On or around December 30, 2004, Plaintiff entered into a Mortgage and Note in the amount of $142,500 with Option One Mortgage Corporation (the "loan" or "mortgage loan") on his property at 156 Jenkins Road, Saco, Maine (the "Property").

16. Plaintiff filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the District of Maine, Case No. 08-21195 on October 9, 2008, and listed the mortgage loan as a debt in his bankruptcy. Option One was listed on and received the Certificate of Notice dated October 10, 2008, for the filing of Plaintiff's Chapter 13 bankruptcy. See the Docket in the Bankruptcy Matter, Case No. 08-21195 at Document No. 6.

17. Upon information and belief, on or around November 5, 2008, American Home Mortgage Servicing, as successor-in-interest to Option One Mortgage Corporation, assigned the subject mortgage to Defendant U.S. Bank. The assignment is recorded in the York County Registry of Deeds, book 15521, page 707.

18. On December 5, 2008, Defendant U.S. Bank filed Proof of Claim No. 4 in Plaintiff's bankruptcy matter. At the time, American Home Mortgage was the loan servicer of the loan. See Claim No. 4 in the Bankruptcy Matter, Case No. 08-21195.

19. Upon information and belief, servicing of the loan was transferred to Defendant Ocwen on or around August 30, 2013. See Documents No. 92 and 93 in the Bankruptcy Matter.

20. On September 17, 2013, the Court granted Plaintiff's Second Amended Order Allowing and Disallowing Claims and Modifying Plan in which the Property was surrendered in full and final satisfaction of claim number 4 (OADC). See Document No. 98 in the Bankruptcy Matter.

21. Plaintiff winterized the home and moved out. Defendant Ocwen received notice of the OADC. See Document number 91-1 in the Bankruptcy Matter.

22. On January 7, 2014, Plaintiff received his bankruptcy discharge. See Document No. 105 in the Bankruptcy Matter.

23. As a result of the discharge, Plaintiff was no longer personally liable to pay amounts alleged owed on the mortgage loan.

24. Defendant Ocwen received notice of the bankruptcy discharge. See Document No. 105-1 in the Bankruptcy Matter.

25. On or around June 24, 2014, more than six months after Plaintiff's discharge, Defendant Ocwen delivered to Plaintiff directly a letter entitled "Delinquency Notice," alleging a total Amount Due of $29,955.18. A copy of this letter is attached hereto as Exhibit 1.

26. On or around July 26, 2014, Defendant Ocwen delivered to Plaintiff directly a notice stating that Defendant Ocwen plans to buy insurance for the Property and Plaintiff "must pay [Defendant Ocwen] for any period during which the insurance [Defendant Ocwen] buys is in effect but you do not have insurance." A copy of this notice is attached hereto as Exhibit 2.

27. On or around July 29, 2014, Defendant Ocwen delivered to Plaintiff directly a "Delinquency Notice" alleging a total due of $32,360.06. A copy of this notice is attached hereto as Exhibit 3.

28. On or around August 1, 2014, Defendant Ocwen received a letter from Plaintiff's counsel, Molleur Law Office. The letter, dated July 29, 2014, provided Defendant Ocwen with notice of Plaintiff's bankruptcy and the surrendering of his Property. Plaintiff's counsel requested that Defendant Ocwen cease communications with Plaintiff and

forward any correspondence to the office of Plaintiff's counsel. A copy of this letter is attached hereto as Exhibit 4.

29. On or around August 18, 2014, Defendant Ocwen delivered to Plaintiff directly a mortgage statement stating that Plaintiff owed Defendant Ocwen a total alleged Amount Due of $33,914.94 before September 17, 2014, and included a payment coupon. A copy of this statement is attached hereto as Exhibit 5.

30. On or around August 19, 2014, Defendant Ocwen delivered directly to Plaintiff a letter entitled "Delinquency Notice" with a total alleged amount due of $33,914.94. A copy of this notice is attached hereto as Exhibit 6.

31. Plaintiff's counsel wrote to Defendant Ocwen a second time on September 4, 2014, regarding Defendant Ocwen's violations of the discharge injunction provisions of the Bankruptcy Code. Plaintiff's counsel requested that Defendant Ocwen withdraw its demand for payment within 30 days or debtors would seek remedy with the bankruptcy court. Defendant Ocwen received the letter through its Maine registered agent, Corporation Service Company, on September 8, 2014. A copy of this letter is attached hereto as Exhibit 7.

32. On or around September 17, 2014, Defendant Ocwen delivered directly to Plaintiff a mortgage statement alleging Plaintiff owed a total Amount Due of $35,474.69 and included a payment coupon. A copy of this statement is attached hereto as Exhibit 8.

33. On or around October 17, 2014, Defendant Ocwen delivered directly to Plaintiff a mortgage statement alleging Plaintiff owed Defendant Ocwen a total Amount Due of $160,669.45, identified the payment as "due now," and included a payment coupon. A copy of this statement is attached hereto as Exhibit 9.

34. On or around October 20, 2014, Defendant Ocwen delivered directly to Plaintiff a letter entitled "Delinquency Notice," alleging a total amount due of $37,347.82. A copy of this notice is attached hereto as Exhibit 10.

35. Defendant Ocwen delivered a mortgage statement dated November 17, 2014, directly to Plaintiff, with the "total amount due" of $161,957.16. Defendant Ocwen included a payment coupon. A copy of this statement is attached hereto as Exhibit 11.

36. On December 1, 2014, Plaintiff filed a Motion to Reopen his Chapter 13 case, which the United States Bankruptcy Court for the District of Maine granted the same day. On December 2, 2014, Plaintiff filed an Adversary Proceeding in the Bankruptcy Court alleging violations of the discharge injunction pursuant to 11 U.S.C. § 524, including Defendant Ocwen's delivery of notices to Plaintiff regarding the discharged debt and the inaccurate credit reporting on Plaintiff's credit reports.

37. Defendant Ocwen delivered a notice dated December 12, 2014, directly to Plaintiff entitled "Mortgage Assistance Resources." A copy of this notice is attached hereto as Exhibit 12.

38. Plaintiff voluntarily dismissed the Bankruptcy Court Adversary Proceeding on December 16, 2014, in anticipation of filing a Complaint in this Court.

39. Defendant Ocwen delivered a notice dated January 9, 2015, directly to Plaintiff regarding a force-placed insurance policy for the Property, stating that it would charge the annual premium of $959.00 to Plaintiff's account. A copy of this notice is attached hereto as Exhibit 13.

40. Plaintiff filed a Complaint in this Court on January 29, 2015, against Defendants, as well as Nationstar Mortgage, LLC, for violations of the Bankruptcy Discharge Injunction

pursuant to 11 U.S.C. §§ 524 and 105, the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*, and the Maine Fair Debt Collection Practices Act, 32 M.R.S.A. §§ 11001 *et seq.*, (collectively, the "FDCPA"), and the Maine Consumer Credit Code, 9-A M.R.S. §§ 9-403(F)-(G), all of which prohibit abusive, deceptive, and unfair collection practices. This previous action in this Court was Case No. 2:15-cv-00042-JDL.

41. The parties to Case No. 2:15-cv-00042-JDL entered into a Confidential Settlement and Release Agreement (the "Settlement") that became effective on May 13, 2015, the terms of which remain confidential. The parties stipulated to this Court to the dismissal of Case No. 2:15-cv-00042-JDL with prejudice and without costs on June 9, 2015.

42. Defendant Ocwen delivered a notice dated May 15, 2015, directly to Plaintiff, stating that Defendant Ocwen "bought insurance on your property and added the cost to your mortgage loan account." The notice further informed Plaintiff that the insurance policy purchased by Defendant Ocwen carried an estimated annual cost of $935.00. A copy of the notice is attached hereto as Exhibit 14.

43. On June 5, 2015, Plaintiff executed a Deed-In-Lieu of Foreclosure on the Property as an absolute conveyance of title to Defendant U.S. Bank, for which the mailing address given is care of Defendant Ocwen. Plaintiff thereby gave up all rights in the Property.

44. The Deed-In-Lieu of Foreclosure was recorded on July 16, 2015, in the York County Registry of Deeds, Book 17087, Page 766.

45. In a letter dated July 1, 2015, sent by Defendant Ocwen directly to Plaintiff, Defendant Ocwen alleged that Plaintiff's hazard insurance on the Property had expired, and informed Plaintiff that Defendant Ocwen planned to purchase hazard insurance for the

Property and would require Plaintiff to pay Defendant Ocwen for the time in which said insurance is in effect. A copy of the letter is attached hereto as Exhibit 15.

46. Plaintiff's counsel contacted Defendant Ocwen's counsel via email on July 16, 2015, following Plaintiff's receipt of the July 1, 2015, letter from Defendant Ocwen and requested that Defendant Ocwen's counsel inform Defendant Ocwen that it had sent the letter to Plaintiff and to ask that Defendant Ocwen stop contacting Plaintiff. Plaintiff's counsel attached a copy of the July 1, 2015, letter to the email to Defendant Ocwen's counsel.

47. Defendant Ocwen sent an Annual Escrow Account Disclosure Statement dated July 27, 2015, directly to Plaintiff. The statement included a balance due and a payment coupon, and sought a payment of $1,159.75. A copy of the statement is attached hereto as Exhibit 16.

48. On August 10, 2015, Plaintiff's counsel sent to Defendant Ocwen's counsel copies of the July 1, 2015, letter and the July 27, 2015, statement that Defendant Ocwen had sent directly to Plaintiff. Plaintiff's counsel again requested that Defendant Ocwen be told to cease all communications to Plaintiff.

49. Defendant Ocwen sent a notice dated August 30, 2015, directly to Plaintiff. In the notice, Defendant Ocwen alleged that Plaintiff's hazard insurance on the Property had expired. Defendant Ocwen further informed Plaintiff that Defendant Ocwen planned to purchase hazard insurance for the Property, that the insurance Defendant Ocwen planned to purchase would cost $935.00 annually, and that Defendant Ocwen would require Plaintiff to pay Defendant Ocwen for the time in which said insurance is in effect. A copy of the notice is attached hereto as Exhibit 17.

50. Defendant Ocwen sent a letter dated October 3, 2015, directly to Plaintiff. In the letter, Defendant Ocwen again alleged that Plaintiff's hazard insurance on the Property had expired, and that, therefore, Defendant Ocwen had obtained an insurance policy on the Property, which was included in the letter sent to Plaintiff. The annual premium for the insurance policy was $935.00, which Defendant Ocwen stated would be charged to Plaintiff's escrow account, and that if Plaintiff did not have an escrow account, Defendant Ocwen would either establish an escrow account for Plaintiff or bill Plaintiff directly. A copy of the letter is attached hereto as Exhibit 18.

51. On or around October 28, 2015, Plaintiff's counsel sent a letter to Defendant Ocwen's counsel regarding Defendant Ocwen's pattern and practice of misconduct toward Plaintiff, attaching copies of Defendant Ocwen's July 1, July 27, August 30, and October 3, 2015 letters, and explaining that, having entered into Settlement with Plaintiff on Plaintiff's earlier claims and recording the Deed-In-Lieu of Foreclosure, Plaintiff was left with zero interest in the Property and therefore Defendant Ocwen had no reason to be contacting Plaintiff.

52. Defendant Ocwen sent a letter dated October 26, 2015, directly to Plaintiff. This letter stated that Defendant Ocwen had established a claim program for borrowers who had received "certain misdated letters" from Defendant Ocwen and who believed this negatively affected them. Defendant Ocwen's letter solicits Plaintiff to submit such claims if applicable, and offers potential payments per loan, the size of said payments to be determined by Defendant Ocwen based upon its review of the circumstances. A copy of this letter is attached hereto as Exhibit 19.

53. Plaintiff's counsel sent a second demand letter to Defendant Ocwen's counsel on or around December 16, 2015, reiterating Defendant Ocwen's violations of 11 U.S.C. § 524 and the federal and Maine FDCPAs.

54. Defendant Ocwen sent a notice dated December 23, 2015, directly to Plaintiff entitled "Confirmation of Cancellation for Lender Placed Insurance." This notice further demands that Plaintiff ensure Defendant Ocwen is provided with documentation of Plaintiff's insurance on the Property going forward, "to protect our mutual interest in the property." A copy of this letter is attached hereto as Exhibit 20.

55. Defendant Ocwen's unending post-Settlement direct written communications to Plaintiff regarding mortgage loan payments and hazard insurance for the Property have caused Plaintiff, without limitation, increased emotional distress, anxiety, headaches, pain, and frustration.

56. Plaintiff fears the collection attempts will continue until he pays what Defendant Ocwen alleges owed.

57. That Defendant Ocwen continued to contact Plaintiff directly regarding the mortgage loan payments and hazard insurance for the Property when Defendant Ocwen knew that Plaintiff had filed for bankruptcy in which he surrendered the Property, no longer personally owed the mortgage loan debt after receiving a bankruptcy discharge, entered into a Confidential Settlement and Release Agreement to which Defendants were also parties after filing claims for similar conduct against Defendants, and executing a Deed-In-Lieu of Foreclosure as an absolute conveyance of title to Defendant U.S. Bank that Defendant Ocwen recorded, leaving Plaintiff with zero interest in the Property, only

   serves as further evidence of the outrageous and egregious nature of Defendant Ocwen's continued actions toward Plaintiff.

58. The combination of Plaintiff's bankruptcy discharge and deed-in-lieu of foreclosure served to extinguish both his personal liability and property rights as well as his ownership and contract obligations.

59. Additionally, Plaintiff's counsel communicated to Defendant Ocwen's counsel on multiple occasions that Defendant Ocwen's direct communications to Plaintiff were inappropriate and requesting that Defendant Ocwen be told to cease communicating with Plaintiff.

60. Each of these notifications, going back to July of 2015, should have caused Defendant Ocwen to halt its contacts to Plaintiff. Yet, Defendant Ocwen continued sending written communications directly to Plaintiff, including as recently as last month (December of 2015).

61. Defendant Ocwen's repeated direct written communications to Plaintiff regarding the Property, including requests to Plaintiff for payment and notifications that Defendant Ocwen would be charging Plaintiff for insurance on the Property in which Plaintiff no longer had any interest, evidence that Defendant Ocwen has inadequate policies and procedures in place for servicing loans that have been discharged in bankruptcy, and that Defendant Ocwen has engaged in a pattern and practice of seeking to collect on debt that has been listed and discharged in bankruptcy, where the debtor no longer has any rights in the property, and the alleged debt is not owed by the debtor, in violation of the Bankruptcy Code's discharge injunction and the FDCPA. Upon information and belief, Defendant Ocwen has engaged in such pattern and practice conduct with debtors and

consumers nationwide, not just in this instant action. *See, e.g., In re Alley*, 09-21500, 2014 WL 2987656, at *1 (Bankr. D. Me. July 1, 2014); *Yarney v. Ocwen Loan Servicing, LLC*, 929 F. Supp. 2d 569, 577-78 (W.D. Va. 2013); *Oliver v. Ocwen Loan Services, LLC*, C12-5374 BHS, 2013 WL 210619, at *4-5 (W.D. Wash. Jan. 18, 2013); *Saccameno v. Ocwen Loan Servicing, LLC*, 15 C 1164, 2015 WL 7293530, at *1-2 (N.D. Ill. Nov. 19, 2015); *Barton v. Ocwen Loan Servicing LLC*, CIV. 12-162 MJD, 2013 WL 5781324, at *6 (D. Minn. Oct. 25, 2013).

62. Defendant U.S. Bank knew or should have known of Defendant Ocwen's misconduct when assigning servicing rights to Defendant Ocwen and maintaining Defendant Ocwen as the servicer of Plaintiff's mortgage loan.

## COUNT ONE: Violation of the Bankruptcy Discharge Injunction, 11 U.S.C. § 524

63. Plaintiff re-alleges and incorporates the paragraphs above as if fully set out herein.

64. Defendant Ocwen's post-Settlement conduct violated the Bankruptcy Discharge Injunction, 11 U.S.C. § 524, enforced pursuant to 11 U.S.C. § 105, by intentionally attempting to collect on mortgage loan debt that had been discharged in Plaintiff's bankruptcy, a discharge that Defendant Ocwen had knowledge of and was reminded of on multiple occasions through counsel.

65. Defendant Ocwen's post-Settlement conduct in violation of 11 U.S.C. § 524 includes, but is not limited to, (1) delivering a statement to Plaintiff that included a balance due and a payment coupon, and sought a payment of $1,159.75, and (2) delivering notices to Plaintiff threatening to purchase hazard insurance on the Property that was the subject of the discharged mortgage loan debt, and, ultimately, purchasing said insurance, and repeatedly telling Plaintiff that he would be responsible for the cost of that insurance.

        Defendant Ocwen's conduct toward Plaintiff is unfair, coercive, harassing, willful, and knowing.

66. Plaintiff and Defendants are parties to the Settlement, yet almost immediately after it became effective, Defendant Ocwen resumed the sort of conduct toward Plaintiff that had forced Plaintiff to file his previous complaint against Defendants in this Court.

67. Despite surrendering the Property in bankruptcy, having had the mortgage loan debt discharged, entering into the Settlement, executing a Deed-In-Lieu of Foreclosure relinquishing all interest in the Property, and communicating through counsel repeatedly that there is no reason for Defendant Ocwen to contact him, Plaintiff continues to be subjected to repeated direct communications by Defendant Ocwen regarding the discharged mortgage loan debt and the Property in which Plaintiff no longer has any interest.

68. Plaintiff's personal liability on the note terminated when he received his bankruptcy discharge, and he had the right to expect a "fresh start" as contemplated by the Code.

69. Defendant Ocwen had no contractual or *in rem* relationship to the Plaintiff, a discharged debtor, and therefore had no reason to be sending letters asserting any such relationship. Defendant Ocwen had no reason whatsoever to send these letters to Plaintiff in light of Plaintiff's discharge, and the actual notice Defendant Ocwen had.

70. The letters served to coerce Plaintiff into believe he owed money to Defendants and he feared that such harassment would not stop until he paid what was alleged owed.

71. Defendant Ocwen's purposeless letters delivered to Plaintiff relating to past debts and obligations constitute coercion and harassment in violation of the discharge injunction.

72. As detailed above, Defendant Ocwen's actions throughout its relationship with Plaintiff, as well as in other matters, demonstrate that Defendant Ocwen engages in a pattern and practice of violating the Bankruptcy Discharge Injunction.

73. As a result of the unceasing conduct and actions of Defendant Ocwen, Plaintiff has suffered actual damages, including, but not limited to, increased emotional distress, anxiety, headaches, pain, and frustration.

74. Defendant Ocwen's actions are unfairly coercive, harassing, and demonstrate willful and intentional violation of 11 U.S.C. § 524.

75. At all relevant times, Defendant Ocwen was acting as the agent of Defendant U.S. Bank. Defendant U.S. Bank is liable for Defendant Ocwen's conduct as Defendant Ocwen's principal and, as the owner of the loan, for hiring Defendant Ocwen to service Plaintiff's mortgage loan. Defendants are jointly and severally liable for such violations.

76. Plaintiff is entitled to recover from Defendants actual and compensatory damages, including costs and attorneys' fees, and punitive damages in this matter pursuant to 11 U.S.C. §§ 524 and 105, and such other and further relief as this Court deems just and proper.

**COUNTS TWO AND THREE: Violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*, and Violation of the Maine Fair Debt Collection Practices Act, 32 M.R.S.A. §§ 11001 *et seq.* (collectively, the "FDCPA")**

77. Plaintiff re-alleges and incorporates the paragraphs above as if fully set out herein.

78. Defendant Ocwen violated the FDCPA by: (1) falsely representing the character, amount, and legal status of the mortgage loan debt through direct written communications to Plaintiff dated July 1, July 27, August 30, October 3, October 26, and December 23, 2015, as detailed above (15 U.S.C. § 1692e(2)(A), 32 M.R.S.A. § 11013(2)(B)(1)); (2)

the use of false representations and deceptive means to collect or attempt to collect on the mortgage loan debt (15 U.S.C. § 1692e(10), 32 M.R.S.A. § 11013(2)); (3) engaging in conduct the natural consequence of which was to harass, oppress, or abuse Plaintiff in connection with collection of the mortgage loan debt by delivering direct written communications to Plaintiff seeking payment not owed following Plaintiff's bankruptcy discharge and demanding Plaintiff obtain and/or pay for hazard insurance for the Property that was the subject of the mortgage loan debt and in which Plaintiff no longer had any interest (15 U.S.C. § 1692d, 32 M.R.S.A. § 11013(1)); (4) communicating directly with Plaintiff when Defendant knew that Plaintiff was represented by an attorney with respect to the mortgage loan debt, and Defendant had knowledge of the attorney's name and address (15 U.S.C. § 1692c(a)(2), 32 M.R.S.A. § 11012(1)(B)); and (5) using unfair or unconscionable means to collect or attempt to collect on the mortgage loan debt (11 U.S.C. § 1692f, 32 M.R.S.A. § 11013(3)).

79. Defendant Ocwen's continued direct written communications to Plaintiff regarding the mortgage loan debt that had been discharged, on the Property in which Plaintiff had given up all interest, despite being told by Plaintiff's counsel (through Defendant Ocwen's counsel) multiple times to cease contact with Plaintiff, demonstrate that Defendant Ocwen engages in a pattern and practice of violating the FDCPA.

80. As a result of Defendant Ocwen's actions and conduct, Plaintiff suffered actual damages, including, but not limited to, harassment, coercion, increased emotional distress, anxiety, and other emotional and mental distress as detailed above.

81. At all relevant times, Defendant Ocwen was acting as the agent of Defendant U.S. Bank. Defendant U.S. Bank is liable for Defendant Ocwen's conduct as Defendant Ocwen's

principal and, as the owner of the loan, for hiring Defendant Ocwen to service Plaintiff's mortgage loan. Defendants are jointly and severally liable for such violations.

82. Plaintiff is entitled to recover actual damages, including emotional distress damages, statutory damages, costs and attorneys' fees from Defendants, and such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

83. Please take notice that Plaintiff demands a trial by jury in this action.

Dated at Portland, Maine, this 12th day of January, 2016.

/s/*Andrea Bopp Stark*
Andrea Bopp Stark, Esq.
Counsel for the Plaintiff, Stephen S. Ackley
Molleur Law Office
419 Alfred Street
Biddeford, Maine 04005
Andrea@molleurlaw.com
(207)283-3777